## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN BUSHANSKY, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| STONEMOR INC., ANDREW AXELROD, SPENCER E. GOLDENBERG, DAVID MILLER, STEPHEN J. NEGROTTI, KEVIN D. PATRICK, JOSEPH M. REDLING, and PATRICIA D. WELLENBACH, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against StoneMor Inc. ("StoneMor" or the "Company") and the members of StoneMor's Board of Directors (the "Board" or the "Individual Defendants") to enjoin the shareholder vote scheduled to authorize StoneMor's acquisition by Axar Capital Management, LP ("Axar") through Axar's subsidiaries Axar Cemetery Parent Corp. ("Parent") and Axar Cemetery Merger Corp. ("Merger Sub") (the "Proposed Transaction"), predicated upon the Defendants' violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

2.     On May 25, 2022, StoneMor issued a press release announcing entry into an Agreement and Plan of Merger dated May 24, 2022 (the "Merger Agreement") to sell StoneMor to Axar.  Under the terms of the Merger Agreement, StoneMor shareholders will receive $3.50 in cash for each share of StoneMor common stock (the "Merger Consideration").

3.     On August 5, 2022, StoneMor filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that StoneMor stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's Conflicts Committee's ("Conflicts Committee") financial advisor, Kroll LLC, operating through its Duff & Phelps Opinions Practice ("Duff & Phelps"); and (ii) Duff & Phelps' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, StoneMor's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company owns and maintains six of its cemetery properties in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of StoneMor.

9.      Defendant StoneMor is a Delaware corporation, with its principal executive offices located at 3331 Street Road, Suite 200, Bensalem, Pennsylvania 19020.  The Company owns and operates cemeteries and funeral homes in the United States.  StoneMor's common stock trades on the New York Stock Exchange under the ticker symbol "STON."

10.      Defendant Andrew Axelrod ("Axelrod") has been Chairman of the Board and a director of the Company since June 2019.  Defendant Axelrod is also co-founder of Axar.

11.      Defendant Spencer E. Goldenberg ("Goldenberg") has been a director of the Company since June 2019.

12.      Defendant David Miller ("Miller") has been a director of the Company since June 2019.

13.     Defendant Stephen J. Negrotti ("Negrotti") has been a director of the Company since April 2018.

14.     Defendant Kevin D. Patrick ("Patrick") has been a director of the Company since September 2020.

15.     Defendant Joseph M. Redling ("Redling") is President and Chief Executive Officer ("CEO") of the Company and has been a director since 2018.

16.     Defendant Patricia D. Wellenbach ("Wellenbach") has been a director of the Company since April 2018.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

<b>OTHER RELEVANT ENTITIES</b>

18.     Axar is an investment manager focused on value-oriented and opportunistic investing.  Headquartered in New York City, Axar was founded by defendant Axelrod, the former co-head of North America for Mount Kellett Capital Management.  Axar's investment team focuses on opportunities across the capital structure and multiple sectors.

19.     Parent is a Delaware corporation and indirect wholly-owned subsidiary of Axar.

20.     Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent.

<b>SUBSTANTIVE ALLEGATIONS</b>

<u><b>Background of the Company</b></u>

21.     StoneMor is an owner and operator of cemeteries and funeral homes in the United States, with 304 cemeteries and 72 funeral homes in 24 states and Puerto Rico as of June 30, 2022. StoneMor cemetery products and services, which are sold on both a pre-need (before death) and at-need (at death) basis, include: burial lots, lawn and mausoleum crypts, burial vaults, caskets, memorials, and all services which provide for the installation of this merchandise.  The Company

operates in two distinct reportable segments, which are classified as (i) Cemetery Operations and (ii) Funeral Home Operations.

22.     On May 12, 2022, StoneMor announced its first quarter 2022 financial results. Revenues for the first quarter were $81.0 million compared to $78.3 million in the first quarter in the prior year.  First quarter adjusted EBITDA was $32.6 million compared to $28.0 million in the first quarter in the prior year.  Reflecting on the Company's results and looking towards the future, defendant Redling stated:

> As we entered 2022, we knew that we were facing tougher comps after our strong sales production performance throughout 2021.  Our teams delivered during the first quarter of 2022, with pre-need sales production growth of 4% compared to a first quarter of 2021 that was up 45% against the first quarter of 2020.  This performance contributed to a year-to-date adjusted EBITDA improvement of $4.6 million, even as we are faced with rising costs and other expense challenges.

**The Proposed Transaction**

23.     On May 25, 2022, StoneMor issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> BENSALEM, PA - May 25, 2022 - StoneMor Inc. (NYSE: STON) ("StoneMor" or the "Company"), a leading owner and operator of cemeteries and funeral homes, today announced that it has entered into a definitive merger agreement under which a subsidiary of Axar Capital Management, LP ("Axar") will be merged with and into StoneMor and all outstanding shares of StoneMor common stock not owned by Axar as to which dissenters' rights are not perfected will be converted into the right to receive $3.50 in cash per share.  Axar currently owns approximately 75% of the outstanding shares of StoneMor common stock.  The cash consideration represents a 54.2% premium to the Company's closing share price on May 24, 2022, the last trading day prior to today's announcement of the execution of a definitive merger agreement.
>
> The agreement was entered into following receipt of a proposal by Axar on September 22, 2021 in which Axar expressed an interest in pursuing discussions concerning strategic alternatives that might be beneficial to the Company and its various stakeholders.  The transaction was negotiated on behalf of StoneMor by the Conflicts Committee of its Board of Directors, which is comprised entirely of independent directors, with the assistance of independent financial and legal advisors.  Following the Conflicts Committee's unanimous recommendation, StoneMor's Board of Directors approved the merger agreement and has

recommended that StoneMor's stockholders adopt and approve the merger agreement and the merger.

"Our agreement with Axar delivers a significant premium for StoneMor's stockholders and ensures a strong foundation for us to continue our expansion," said Joe Redling, President and Chief Executive Officer. "Our Board firmly believes that this transaction is in the best interests of all of our stockholders other than Axar and its affiliates and delivers an ongoing commitment to excellence for our customers, employees and communities we serve."

The agreement provides for a "go-shop" period during which the Conflicts Committee (acting through its financial advisor) will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. The "go-shop" period is 60 days subsequent to signing of the Merger Agreement, ending July 23, 2022. There can be no assurance that this "go-shop" process will result in a superior proposal, particularly in light of Axar's ownership position and the fact that Axar has no obligation to support any such superior proposal. StoneMor does not intend to disclose developments with respect to the solicitation process unless and until its Conflicts Committee and the Board of Directors has made a decision with respect to any potential superior proposal. The Company will pay Axar a termination fee in certain circumstances, including a fee equal to 2% of the aggregate value of the non-Axar shares if the Company terminates the agreement during the "go-shop" period to enter into a superior proposal that Axar supports, and a fee equal to 4% of the aggregate value of the non-Axar shares if the Company terminates the agreement after the "go-shop" period to enter into a superior proposal that Axar supports. No termination fee is payable if the Company terminates the agreement upon a change of recommendation in connection with a superior proposal that is not supported by Axar.

The merger is subject to approval by holders of a majority of the outstanding common stock of StoneMor and in addition, requires the approval by the holders of a majority of the outstanding common stock of StoneMor not owned by Axar or any of StoneMor's directors or executive officers or members of their immediate families. Axar has agreed to vote the shares of StoneMor common stock it owns in favor of the merger agreement. The merger agreement is also subject to customary closing conditions. Axar has fully committed financing and the transaction is not subject to a financing condition.

Subject to satisfaction of the conditions to closing, the transaction is currently expected to close in the fall of 2022. If the transaction is completed, StoneMor will become a privately held company and its stock will no longer trade on the New York Stock Exchange.

Duff & Phelps, now rebranded as Kroll, is serving as financial advisor and Faegre Drinker Biddle & Reath LLP is serving as legal counsel to the Conflicts Committee.

Houlihan Lokey is serving as financial advisor and Schulte Roth & Zabel LLP is serving as legal counsel to Axar. Duane Morris LLP is serving as legal counsel to the Company.

## Insiders' Interests in the Proposed Transaction

24.     StoneMor insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of StoneMor.

25.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Axar. The following table sets forth the value of cash payments that StoneMor insiders stand to receive in consideration of their ordinary shares upon closing of the Proposed Transaction:

| Name of Owner | Number of Shares of Common Stock (#) | Value of Common Stock ($) |
|---|---|---|
| Joseph M. Redling | 1,431,191 | 5,009,168.50 |
| Jeffrey DiGiovanni | 59,182 | 207,137.00 |
| Tom Connolly | 14,247 | 49,864.50 |
| Lindsay Granson | 132,792 | 464,772.00 |
| Sahel S. Laher | — | — |
| Robert Page | 8,190 | 28,665.00 |
| Austin K. So[1] | 246,622 | 863,177.00 |
| Keith Trost | 8,939 | 31,286.50 |
| Andrew Axelrod[2] | 88,633,045 | 310,215,657.50 |
| Spencer E. Goldenberg | 10,000 | 35,000.00 |
| David Miller | 941,432 | 3,295,012.00 |
| Stephen J. Negrotti | 48,634 | 170,219.00 |
| Kevin D. Patrick | — | — |
| Patricia D. Wellenbach | 6,064 | 21,224.00 |

26.     Moreover, under the terms of the Merger Agreement, upon closing of the merger, all Company options, restricted shares, and phantom units will vest and convert into the right to

receive cash payments.  The following table sets forth the value of cash payments that Company insiders will receive in connection with their Company options, restricted shares, and phantom units upon closing of the Proposed Transaction:

| Name | Restricted Shares | | Shares Underlying Phantom Units | | Stock Options | | |
|---|---|---|---|---|---|---|---|
| | Number of Restricted Shares That Have Not Vested (#) | Value of Restricted Shares That Have Not Vested ($) | Number of Shares Underlying Phantom Units That Have Not Vested (#) | Value of Shares Underlying Phantom Units That Have Not Vested ($) | Number of Securities Underlying Unexercised Stock Options (#) | Exercise Price of Unexercised Stock Options ($) | Value of Unexercised Stock Options ($) |
| Joseph Redling | 208,334 | 729,169 | — | — | 2,500,000 | 1.20 | 5,750,000 |
| | — | — | — | — | 312,500 | 1.71 | 559,375 |
| Jeffrey DiGiovanni | 37,667 | 131,834 | — | — | 450,000 | 1.20 | 1,035,000 |
| | — | — | — | — | 56,500 | 1.71 | 101,135 |
| Tom Connolly | 37,667 | 131,834 | — | — | 450,000 | 1.20 | 1,035,000 |
| | — | — | — | — | 56,500 | 1.71 | 101,135 |
| Lindsay Granson | 33,334 | 116,669 | — | — | 75,000 | 1.20 | 172,500 |
| | — | — | — | — | 33,334 | 1.71 | 59,668 |
| Sahal S. Laher | — | — | — | — | 225,000 | 3.42 | 18,000 |
| Robert Page | — | — | — | — | — | — | — |
| Austin K. So[1] | — | — | — | — | — | — | — |
| Keith Trost | 25,000 | 87,500 | — | — | 75,000 | 1.20 | 172,500 |
| | — | — | — | — | 37,500 | 1.71 | 67,125 |
| Andrew Axelrod | — | — | 9,174 | 32,110 | — | — | — |
| Spencer E. Goldenberg | — | — | 63,088 | 220,806 | — | — | — |
| David Miller | — | — | 57,466 | 201,132 | — | — | — |
| Stephen J. Negrotti | — | — | 56,327 | 197,146 | — | — | — |
| Kevin D. Patrick | — | — | 16,370 | 57,296 | — | — | — |
| Patricia D. Wellenbach | — | — | 53,640 | 187,741 | — | — | — |

27.    Further, if they are terminated in connection with the Proposed Transaction, StoneMor's named executive officers stand to receive substantial severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash ($) | Equity ($) | Pension/ NQDC ($) | Perquisites/ Benefits ($) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Joseph M. Redling | 1,050,000 | — | — | — | — | — | 1,050,000 |

**The Proxy Statement Contains Material Misstatements or Omissions**

28.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to StoneMor's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Conflicts Committee's financial advisor Duff & Phelps; and (ii) Duff & Phelps' potential conflicts of interest.

***Material Omissions Concerning the Company's Financial projections and Duff &Phelps' Financial Analyses***

30.     The Proxy Statement omits material information regarding Company management's financial projections.

31.     Specifically, the Proxy Statement omits the Company's financial projections for the years ending December 31, 2027, to December 31, 2036, and the methodology for how the Company's projections for these years was derived.

32.     The Proxy Statement describes Duff & Phelps' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Duff & Phelps' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, StoneMor's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Duff & Phelps' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

33.     With respect to Duff & Phelps' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate of 3.50% used to discount the cash flows attributable to the deferred revenue backlog and the discount rates ranging from 9.00% to 10.00% used to discount the cash flows attributable to projected future sales; (ii) quantification of the unlevered free cash flows for the years ending December 31, 2027, to December 31, 2036, used in the analysis; (iii) quantification of the estimated terminal values for StoneMor; and (iv) the implied terminal multiples resulting from the analysis.

34.     With respect to Duff & Phelps" *Selected Publicly Companies Analysis* and *Selected Merger and Acquisitions Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Duff & Phelps, respectively.

35.     Without such undisclosed information, StoneMor stockholders cannot evaluate for themselves whether the financial analyses performed by Duff & Phelps were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which Duff & Phelps' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

36.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of the Conflicts Committee's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Duff & Phelps' Potential Conflicts of Interest***

37.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Duff & Phelps.

38.     The Proxy Statement fails to disclose the expected fees to be received by Duff & Phelps for its services performed for the Conflicts Committee and whether Duff & Phelps has performed any past services to any of the parties to the Merger Agreement or their affiliates and, if so, the nature of these services and fees received for these services.

39.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40.     The omission of this information renders the statements in the "Opinion of the Conflicts Committee's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and StoneMor's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

42.     Plaintiff repeats all previous allegations as if set forth in full.

43.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresents and/or omits material facts, including material information about the Company's financial projections, the financial analyses performed by the Conflicts Committee's financial advisor, the background of the Proposed Transaction, and Duff & Phelps' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

46.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of StoneMor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of StoneMor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, StoneMor's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of StoneMor, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to StoneMor stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 25, 2022                                          **WEISS LAW**

By  *s/ Mark D. Smilow*
        Mark D. Smilow
        Michael Rogovin (to be admitted *pro hac vice*)
        305 Broadway, 7th Floor
        New York, NY 10007
        Tel: (212) 682-3025
        Fax: (212) 682-3010
        Email: msmilow@weisslawllp.com

        *Attorneys for Plaintiff*